129 B.R. 29 (1991)
In the Matter of L. Gene JARRELL, Gladys E. Jarrell, Debtors (Two Cases).
WILMINGTON TRUST COMPANY, Plaintiff,
v.
L. Gene JARRELL, Gladys E. Jarrell, Defendants,
v.
BORG-WARNER ACCEPTANCE CORPORATION, Third-Party Defendant.
TRANSAMERICA COMMERCIAL ACCEPTANCE CORPORATION, formerly known as Borg-Warner Acceptance Corporation, a Delaware corporation, Plaintiff,
v.
L. Gene JARRELL, Gladys E. Jarrell, Defendants.
Bankruptcy Nos. 86-365, Adv. Nos. 87-4, 87-5.
United States Bankruptcy Court, D. Delaware.
July 24, 1991.
*30 *31 Noel C. Burnham, Matthew J. Lynch, Jr., Wilmington, Del., for Wilmington Trust Co., plaintiff.
William L. Witham, Jr., Dover, Del., for Transamerica Commercial Acceptance Corp., formerly known as Borg-Warner Acceptance Corp., plaintiff/third-party defendant.

MEMORANDUM OPINION AND ORDER
HELEN S. BALICK, Bankruptcy Judge.
Plaintiffs Transamerica Commercial Finance Corporation (Transamerica), a successor-in-interest to Borg-Warner Acceptance Corporation, and Wilmington Trust Company have filed separate, but factually related complaints against debtors L. Gene Jarrell and Gladys E. Jarrell. The plaintiffs object to the discharge of their debts, based on 11 U.S.C. § 727, and alternatively seek a determination of the dischargeability of certain debts, based on 11 U.S.C. § 523. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).
I. Facts.[1]
B & J Mobile Home Sales sold mobile homes to retail customers from a location in Dover, Delaware. Originally, Gene Jarrell and Richard Engle operated B & J as a partnership. On July 1, 1983, they and Wilmington Trust executed a mobile home financing agreement. This agreement contemplated the sale and assignment by B & J to Wilmington Trust of retail installment contracts arising from B & J sales of mobile homes. In exchange for Wilmington Trust's purchase of such an installment contract, B & J agreed, among other things, to provide Wilmington Trust "with a certificate of title to the property subject to the contract assigned to [Wilmington Trust] showing a lien or encumberance [sic] for the benefit of Wilmington Trust Company."
At some point prior to April 23, 1985, Mr. Engle ceased to be a partner of B & J, and Mr. Jarrell henceforth operated B & J as a sole proprietorship. The business form of B & J is not disputed. Gladys Jarrell was the office manager of B & J. She supervised the receptionist and service manager, and helped out in the service department. In 1986, B & J employed a bookkeeper. Because Mrs. Jarrell had no bookkeeping training or experience herself, her supervision of the bookkeeper was minimal.
On April 23, 1985, Mr. Jarrell entered into a "floor plan" agreement with Transamerica. This agreement provided that Transamerica would advance funds for the purchase of manufactured homes. Transamerica took a security interest in these homes and all future proceeds deriving from the sale of these homes. Upon the sale of each home by B & J to a customer, the agreement obligated B & J to hold the proceeds in trust for Transamerica and to immediately use these proceeds to repay Transamerica for funds it had advanced. Until B & J repaid Transamerica these funds, Transamerica held the certificate of origin to the manufactured home. The certificate of origin is required to obtain a certificate of title from the Department of Motor Vehicles.
Through a separate document, Mr. and Mrs. Jarrell personally guaranteed all liabilities *32 of B & J Mobile Home Sales to Transamerica.
The relevant composite effect of the BWA and Wilmington Trust agreements was that Transamerica had a security interest in each mobile home B & J sold that a customer financed pursuant to a retail installment contract that, in turn, was subsequently assigned to Wilmington Trust. In order for B & J to satisfy the certificate of title requirement of the Wilmington Trust agreement, it first had to satisfy the repayment requirement of the Transamerica agreement to obtain the certificate of origin.
In 1986, Jarrell sold the following four manufactured homes ("the homes") to retail customers without informing Transamerica of the sales or paying Transamerica the sale proceeds:
1. 1986 Catalina, Serial Number 1985 to McParlin and McCoy on June 10, 1986;
2. 1986 Catalina, Serial Number 7527 to Mayhorn on June 26, 1986;
3. 1986 Zimmer, Serial Number 2327 to Tennant and Turner on July 25, 1986; and
4. 1986 Country Manor (Homes of Merit), Serial Number 3437 to McFarland.
These types of sales are known in the financing industry as selling property "out of trust." B & J assigned the installment contracts associated with the first three of these home sales to Wilmington Trust. The total value of these three contracts was $36,002. Transamerica did not discover these out of trust sales until an inventory inspection it conducted on August 7. After negotiations between the parties, on August 29, 1986, B & J paid Transamerica $32,000 towards monies it owed Transamerica pursuant to the floor plan agreement. Although Transamerica understood the $32,000 to be sales proceeds, the monies were actually derived from the sale of real estate. Because B & J never paid Transamerica in full for the out of trust proceeds, B & J never received the certificates of origin for any of the homes. Consequently, Wilmington Trust never received the three certificates of title it was entitled to pursuant to the financing agreement.
L. Gene Jarrell and Gladys Jarrell filed a joint Chapter 7 petition in this court on September 11, 1986. Transamerica agreed to turn over the $32,000 to the estate as the result of a preference action filed by the trustee, Jeremy Homer.
Wilmington Trust filed a complaint to determine dischargeability of debts. The debtors answered and filed a third party complaint against Transamerica, alleging they were damaged by Transamerica's failure to provide certificates of origin for the homes. Transamerica answered and filed its own adversary complaint against the debtors to determine dischargeability of debts.
II. The Merits of the Plaintiffs' Objections to discharge.
A. The Debtors did not refuse to obey an order of this court.
The plaintiffs assert that § 727(a)(6)(A) operates to deny the debtors a discharge. This section provides that a discharge shall be denied if:
the debtor has refused, in the case  to obey any lawful order of the court, other than an order to respond to a material question or to testify. 11 U.S.C. § 727(a)(6)(A) (emphasis added).
Specifically, plaintiffs rely upon this court's December 31, 1986 order, wherein this court ordered debtors to immediately deposit good funds in a Wilmington Trust accounts in the amount of $2,326.90. Debtors have not paid these monies.
Initially, the debtors argue this ground "is an attempt to argue facts not in evidence." In addition, the debtors apparently argue that they were not on adequate notice of this allegation in order to have an opportunity to rebut at trial the § 727(a)(6)(A) ground. This argument is without merit. Wilmington Trust's complaint sufficiently articulated the § 727(a)(6)(A) ground for non-dischargeability and referred to the court order. This reference was repeated in the pretrial order. *33 On the evidentiary issue, the court order was admitted twice, in Exhibit B and L of the two volume collection of stipulated exhibits. And the debtors did admit that the ordered sums have never been paid to Wilmington Trust.
Addressing next the merits of plaintiffs' § 727(a)(6)(A) ground, the court notes that in its complaint and briefing, the plaintiffs take the position that debtors "failed" to obey the court order. Section 727(a)(6)(A) allows this court to deny a discharge only if the debtors "refused" to obey the court order. The use of the word "refused" in § 727(a)(6)(A) must be distinguished from the use of the word "failed" elsewhere in § 727(a). Bankruptcy law recognizes that mere failure does not equal refusal where the creditor does not show wilful or intentional disobedience, as opposed to inability, inadvertence or mistake. 4 Collier on Bankruptcy, ¶ 727.09[2] (15th ed. 1979) (citing cases). Plaintiffs have never alleged or argued that the debtors refused to obey the court's December 31, 1986 order. Plaintiffs' § 727(a)(6)(A) objection is therefore overruled.
B. Section 727(a)(3) does not apply to deny discharge.
Wilmington Trust also alleges that for the calendar year 1986, the debtors "failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3).
The debtor's duty under § 727(a)(3) is not to provide its creditors with a statement of its financial condition, but with information sufficient to allow the creditors to ascertain its financial condition. Id.; In re Silverman, 10 B.R. 727, 731-732 (Bankr.S.D.N.Y.1981). Whether the debtor has provided sufficient information depends on the facts of each case, and is within the discretion of the bankruptcy court. In re Decker, 595 F.2d 185, 187 (3d Cir.1979). The creditor alleging that a discharge should be denied under § 727(a) has the burden of proof. Bankr.R. 4005.
In the pre-trial order, the debtors conceded that no accounting or other financial statement was prepared for 1986. In the same pre-trial order however, Wilmington Trust conceded that the debtors maintained a record of cash receipts and cash disbursements. In addition, at trial, the debtors testified that they maintained the same records in 1986 as they did for 1985, when an accountant did prepare a financial statement. The debtors also introduced business records during discovery and at trial in response to Wilmington Trust's complaint under § 727(a)(3). Wilmington Trust did not offer any evidence that these records were insufficient. To the contrary, Mr. Fox, B & J's accountant, testified that before the chapter 7 petition was filed, he had started preparing a financial statement for 1986. Under these circumstances, Wilmington Trust has not met its burden as a matter of fact and law to show that § 727(a)(3) applies.
In light of this holding, it is unnecessary to reach the justification issue of § 727(a)(3).
C. Mr. Jarrell has failed to satisfactorily explain or justify the loss of over $137,000 in 1986.
The final ground plaintiffs assert should apply to deny a discharge is based on § 727(a)(5), which reads:
The court shall grant the debtor a discharge, unless  . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.
B & J began 1986 with $77,449.00 in cash. During 1986, B & J received an additional $996,330.00 in cash and disbursed $936,130.00. Mathematically then, B & J should have had $137,652.00 in cash on the date of filing. The debtors' amended financial statement, however, lists less than $140.00 in cash. This loss of assets shifts the burden of proof to the debtor to satisfactorily explain the loss. Id.; see In re Hochberg, 17 F.Supp. 916, 919 (W.D.Pa. *34 1936). Debtors' only explanation is that the bank-to-bank fund transfers account for the numerical discrepancies. The above computations, however, already discount the effect of the bank-to-bank transfers and so debtors' position is without merit.
At this juncture, it is necessary to distinguish between the debtors Mr. and Mrs. Jarrell. Mr. Jarrell was the sole proprietor of B & J whereas Mrs. Jarrell was just an employee of B & J. The portion of § 727(a)(5) requiring the debtor to explain a loss of assets is based on the premise that the debtor, who is in control of the assets, is in the best position to know what happened to those assets. See 4 Collier on Bankruptcy, ¶ 727.08 (15th ed. 1979). This rationale does not apply to Mrs. Jarrell, a mere employee with no bookkeeping expertise. To deny her a discharge based on § 727(a)(5) would impute to her knowledge of her husband, and in effect, hold her to a strict liability standard. This result is outside the scope of § 727(a). See First Texas Savings Assoc. v. Reed, 700 F.2d 986, 993 (5th Cir.1983) (§ 727(a)(2) does not apply to deny discharge to spouse where other spouse engaged in fraudulent conduct); Davis v. Jacobs, 35 F.2d 936 (1st Cir.1929) (similarly construing precursor of § 727(a)(2)). Therefore, plaintiffs' objection to Mrs. Jarrell's discharge is overruled. Mr. Jarrell, however, has failed to explain the loss of assets and his discharge is therefore denied.
III. The merits of plaintiffs' complaint to determine dischargeability.
Plaintiffs also argue certain debts of the debtors should be determined nondischargeable pursuant to sections 523(a)(2)(A), 523(a)(4), 523(a)(5), and 523(a)(6). First, since this court has determined that Mr. Jarrell will be denied a discharge, it is unnecessary to determine the dischargeability of specific debts as applied to him.
The only remaining issue then is whether any of the above subsections of 523 apply to make any of Mrs. Jarrell's debts nondischargeable. The reasoning of Section II.C., supra, applies with equal force to this issue. The plaintiffs' arguments all rely on misconduct solely of Mr. Jarrell. Transamerica relies upon his sale of homes out of trust and failure to ever pay it an amount equal to the sale proceeds. Wilmington Trust relies upon his failure to provide it with certificates of origin required by the financing agreement. None of these transactions involved Mrs. Jarrell. She signed neither the financing agreement nor the floor plan agreement. She did not sell any of the four out of trust homes. Mr. Jarrell was not her agent. Mrs. Jarrell is liable on these claims only because of her personal guaranty. Plaintiffs' have not provided the court with any reasons why then her debts in connection with these transactions should be non-dischargeable. The law is clear that, under these circumstances, her debts are dischargeable. Newmark v. National Bank of North America, 20 B.R. 842, 857-58 (Bankr. E.D.N.Y.).
IV. Debtors' third party complaint against Transamerica is dismissed.
The debtors have not presented any argument on their third party complaint against Transamerica for damages. That complaint is dismissed.
V. Conclusion.
An order in accordance with this Memorandum Opinion is attached.

ORDER
AND NOW, July 24, 1991, for the reasons stated in the attached Memorandum Opinion,
IT IS ORDERED THAT:
1. L. Gene Jarrell is denied a discharge pursuant to 11 U.S.C. § 727(a)(5).
2. Contemporaneously with this order a Discharge of Debt order shall be entered as to the debts of Gladys E. Jarrell.
3. The third-party complaint of debtors L. Gene Jarrell and Gladys E. Jarrell against Transamerica is dismissed.
NOTES
[1] At trial, the parties submitted two bound volumes of exhibits comprising hundreds of pages, including over 45 pages of unnecessary duplicate documents, for the court to consider as part of the record. The parties agreed to refer in their briefing to specific pages they wished the court to read. The vast majority of the exhibits were never referred to. In particular, the parties introduced over 240 pages of deposition transcripts as part of the record. Only six pages were referred to in the briefs.