In re Tony COSTANTINI, Debtor.

Lynnea CONCANNON, Trustee, Plaintiff,

v.

Tony COSTANTINI, Defendant.

Bankruptcy No. 94–02589–6J7.
Adversary No. 95–229.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

May 3, 1996.

Lynnea S. Concannon, Orlando, FL, for Plaintiff.

Leigh R. Meininger, Orlando, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO REVOKE DISCHARGE OF DEBTOR

KAREN S. JENNEMANN, Bankruptcy Judge.

This adversary proceeding came on for final evidentiary hearing on January 3, and March 5, 1996, on the Complaint of the Chapter 7 Trustee, Lynnea Concannon (the "Trustee") to Revoke the Discharge of the Debtor, Tony Costantini (the "Debtor") based upon the Debtor's failure to comply with a court order pursuant to Section 727(a)(6)(A) of the Bankruptcy Code.

*Bankruptcy Case.* On May 12, 1994, the Debtor filed a petition voluntarily instituting this Chapter 7 case. The deadline for filing a complaint objecting to discharge was August 8, 1994 (the "Complaint Deadline") (Doc. No. 3 in Main Case). No party, including the Trustee, objected to the entry of the Debtor's discharge on or before the Complaint Deadline.

On September 15, 1994, an Order Approving Trustee's Report of No Distribution and Closing Estate was erroneously entered (Doc. No. 11 in Main Case). On November 4, 1994, the Trustee moved to reopen the estate (Doc. No. 13 in Main Case) because the Trustee had "received information regarding potential assets of the [D]ebtor that were not disclosed on the [D]ebtor's sched-

ules." The Debtor did not object to the Trustee's motion and, on November 30, 1994, an order was entered which permitted the Trustee to proceed with her investigation into undisclosed assets (Doc. No. 17 in Main Case). On April 28, 1995, an order of discharge was entered (the "Discharge") (Doc. No. 22 in Main Case).

*Trustee's Efforts to Obtain Documents.* Beginning as early as March 10, 1995, the Trustee started her efforts to get information from the Debtor or others regarding his undisclosed and unadministered assets. First, she obtained an Order for 2004 Examination of the Debtor's spouse, Mary Costantini, on March 28, 1995 (Doc. No. 20). The Debtor's spouse attended the examination but was not required to produce any documents. Subsequently, on June 30, 1995, the Trustee obtained a second Order Directing a 2004 Examination Against the Debtor (the "Document Production Order") (Doc. No. 24). Although the order required the Debtor to produce documents at this examination, the list of documents was not attached to the order. However, the Debtor did attend the examination and acknowledged that he understood which documents he was required to produce pursuant to the Document Production Order. The examination was rescheduled for July 14, 1995, to give the Debtor time to gather the requested documents. The Debtor failed to attend the continued examination (Trustee's Exhibit 2). The Trustee agreed to continue the examination a second time provided the requested documents were promptly produced. The Debtor completely failed to produce any of the requested documents, and no continued examination occurred.

On August 10, 1995, the Trustee filed this adversary proceeding seeking to revoke the Debtor's Discharge because of his continuing failure to produce the requested documents. Only after filing this adversary proceeding did the Trustee obtain the first few documents from the Debtor on October 5, 1995 (Trustee's Exhibit 5). The documents produced were woefully inadequate to act as a good faith response to the Document Production Order. Accordingly, on October 6, 1995, the Trustee wrote the Debtor a letter (Trustee's Exhibit 4) informing the Debtor of the deficiencies in the document production and requesting the immediate production of the remaining documents requested.

*Inadequate Document Production.* Finally, on December 27, 1995, the Debtor delivered three boxes full of miscellaneous checks and financial records to the Trustee's office. The documents were in no coherent order.

The Debtor testified that the vast majority of the documents produced had been in the offices of his accountant who was preparing his tax returns for several prior tax years. The accountant testified that he had finished completing these tax returns by mid-November and that, at most, he had one large box which contained a smaller box of documents inside it. His testimony also indicated that he may have had one additional bag of documents.

In any event, the accountant had finished reviewing the documents by mid-November. The Debtor did not deliver any materials which had been retained by his accountant to the Trustee until December 27, 1995. Further, the accountant's testimony was clear that he did not have the voluminous number of documents in his possession which the Debtor ultimately produced to the Trustee. As such, the Debtor's production was late and his excuse that the documents were at his accountant's office was not credible.

Because of the short time between the Debtor's belated production on December 27, 1995, and the date of the first evidentiary hearing scheduled in this adversary proceeding on January 3, 1996, a recess was taken to permit the Trustee to examine the contents of the documents produced. On March 5, 1996, the Trustee presented additional evidence as to the content of the documents produced by the Debtor. Based upon the Trustee's review, the Debtor failed to produce *any* documents relating to his current or past business operations, which include T.C. Enterprises, Auto Emporium and Sun State Auto. The Debtor previously had owned and operated Sun State Auto. He certainly should have had some financial records relating to this business to produce to the Trustee.

The Debtor currently is employed either as a direct employee or as an independent contractor for Auto Emporium; however, no records of any kind were produced relating to this current business relationship. He produced no pay stubs, no W–2 income statement forms, and no 1099 independent contractor statements. Certainly, these basic documents must exist if the Debtor's testimony is to be deemed credible.

The only documents that the Debtor produced were copies of many checks dating back to 1984 which were unrelated to the Debtor's current and past business activities and which were jumbled into an unidentifiable mass without any type of organization. The Debtor produced no records to substantiate his income, expenses or assets. The Debtor's testimony that these documents simply did not exist was not credible. As such, after weighing the credibility of the Debtor, the Court would find that the Debtor has possession of but has failed to turn over requested financial records to the Trustee as required by the Document Production Order. The Trustee cannot conclude her investigation as to whether the Debtor has fully and completely turned over all of his assets.

■ *Burden of Proof.* In an objection to discharge proceeding, the burden is on the plaintiff to demonstrate by a preponderance of the evidence that the debtor has violated one of the subsections of Section 727(a) of the Bankruptcy Code.[1] *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992), *citing, Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); Fed.R.Bankr.P. 4005 (1993). Once the plaintiff meets this burden by producing evidence sufficient to support the objection, the burden shifts to the defendant to satisfactorily explain the transaction or omission. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984).

■ *Objection to Discharge Under Section 727.* In order to fulfill the primary purpose of the Bankruptcy Code of providing debtors with a "fresh start," objections to discharge under Section 727 are construed strictly against plaintiff and liberally in favor of debtor. *Kalvin v. Clawson (In re Clawson)*, 119 B.R. 851, 852 (Bankr.M.D.Fla.1990) (Paskay, C.J.). Section 727(d) of the Bankruptcy Code provides that,

> (d) On request of the trustee, ..., and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

> . . . . .

> (3) The debtor committed an act specified in subsection (a)(6) of this section.

11 U.S.C. § 727(d)(3) (1993). Subsection (a)(6) of Section 727 further provides in relevant part:

> (a) The court shall grant the debtor a discharge unless—

> . . . . .

> (6) The debtor has refused, in the case—
> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

> . . . . .

11 U.S.C. § 727(a)(6)(A) (1993).[2] An action for revocation of a debtor's discharge must be based on grounds unknown to the plaintiff in time for the plaintiff to have filed a complaint objecting to discharge within the time frame contemplated by the Bankruptcy Code and Rules plus any extensions granted by the court. *Longo v. McLaren (In re McLaren)*, 136 B.R. 705, 717 (Bankr.N.D.Ohio 1992), *aff'd*, 3 F.3d 958 (6th Cir.1993).

■ Denial of a discharge for refusal to obey a court order must be a result of "wilful, intentional disobedience or dereliction"

---

1. Title 11, United States Code. Because debtor filed his bankruptcy case prior to the enactment of the Bankruptcy Reform Act of 1994 (the "Act"), this adversary proceeding is governed by the law applicable prior to the effective date of the Act. Pub.L. No. 103–394, 108 Stat. 4196 (effective October 22, 1994), Sec. 702.

2. Subsection (a)(6)(A) of Section 727 of the Bankruptcy Code retained the same language as previously used in the former Bankruptcy Act of 1898 (the "Bankruptcy Act"). Accordingly, cases decided under the Bankruptcy Act are relevant in applying Section 727(a)(6)(A) of the Bankruptcy Code. 4 Collier on Bankruptcy ¶ 727.09[2] (15th ed. 1995).

**316**

and not merely inadvertence or mistake. *Friendly Fin. Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir.1974). The Fifth Circuit Court of Appeals in *Jones* adopted the position of the Second Circuit in identifying factors to be considered in determining whether violation of a court order justifies a denial of discharge:

> [The bankruptcy judge] should weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied. [The bankruptcy judge] should consider such factors as the intent behind the bankrupt's acts—were they wilful or was there a justifiable excuse; was there injury to creditors; and is there some way the bankrupt could make amends for his conduct.

*Id., citing, In re Kokoszka,* 479 F.2d 990, 997 (2nd Cir.1973), *aff'd,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, *reh'g denied,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974).

■ Mere 'failure' to obey a court order is insufficient under Section 727(a)(6)(A). *Wilmington Trust Co. v. Jarrell (In re Jarrell),* 129 B.R. 29, 33 (Bankr.D.Del.1991). The plain language of the statute requires that the debtor *refuse* to obey a court order. *Id.* Correlatively, belated compliance with a court order also may be insufficient to support an objection to discharge. *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134, 138 (1st Cir.1992).

■ In this case, the Trustee has demonstrated that Debtor failed to produce documents requested in connection with an examination ordered by this Court. These documents are necessary for the Trustee and the Debtor's creditors to understand the Debtor's financial affairs. In addition, the Trustee had no reason to know of potential undisclosed assets prior to the Complaint Deadline.

Debtor has failed to show that he is unable to produce the documents. To the contrary, his actions indicate an attempt to avoid production and a refusal to comply with the Document Production Order. The logical inference is that the Debtor has assets which he is trying to hide. Although Debtor argues that the requested documents do not

exist, he has offered no explanation as to how his tax returns could have been completed without such documents or why such documents could not be obtained from other sources.

The Debtor has intentionally refused to obey the Document Production Order. The Debtor understood what documents were to be produced as is reflected by his agreement with the Trustee to continue his examination so he could gather the documents. Many months have passed since the continuance was requested, and no meaningful documents have been supplied by the Debtor. The Debtor has had more than ample time to comply. His refusal to produce the documents is a sufficient basis for revocation of his discharge under Section 727(d)(3) and Section 727(a)(6)(A). Accordingly, Debtor's Discharge will be revoked. A separate order will be entered in accordance with the foregoing.