**In re Glenn E. HARMON and April Lynn Harmon, Debtors.**

**Byron Shinn, as Trustee of the Elrod Trust, Plaintiff,**

v.

**Glenn E. Harmon and April Lynn Harmon, Defendants.**

**Bankruptcy No. 8:03–bk–2396–PMG.
Adversary No. 8:05–ap–418–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 13, 2007.

Richard V. Ellis, Hausburg & Ellis, PA, Sarasota, FL, for Debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing in the above-captioned adversary proceeding.

The Plaintiff, Byron Shinn, as Trustee of the Elrod Trust, commenced this proceeding by filing a Complaint Objecting to Discharge. In the Complaint, the Plaintiff asserts that the discharge of the Debtors, Glenn E. Harmon and April Lynn Harmon, should be denied pursuant to § 727(a)(2), § 727(a)(3), § 727(a)(5), and § 727(a)(6) of the Bankruptcy Code. The focus of the Complaint is the Debtors' failure to produce certain financial records to the Chapter 7 Trustee in connection with their bankruptcy case.

### Background

The Debtor, Glenn E. Harmon, is a wholesale car dealer. The Debtor, April Lynn Harmon, is employed by the United States Post Office.

Prior to February of 2001, the Debtor, Glenn E. Harmon, owned and operated a sole proprietorship in Englewood, Florida, known as ABC Motor Company. On February 22, 2001, the Debtor sold "all inventory of ABC Motor Company to include all vehicles and office furnishings to Nyle Mellon." According to the "Bill of Sale" signed by the seller and the buyer, the purchase price for the inventory was $190,000.00. (Plaintiff's Exhibit 20; Debtors' Exhibit 11). The Bill of Sale also provided that the Debtor would "assist Mr. Mellott as a buyer and seller of vehicles for a period of one year or longer if needed as an independent contractor."

The Debtors filed a petition under Chapter 7 of the Bankruptcy Code on February 6, 2003.

On their schedules, the Debtors listed their home in Englewood, Florida, as valued at $250,000.00, and encumbered by two mortgages that totaled $161,570.00. The Debtors also listed personal property with an aggregate value of $1,976.00.

On their schedule of liabilities, the Debtors listed creditors holding general unsecured claims in the total amount of $1,863,665.39. The largest claim is a judgment debt held by the Plaintiff in the amount of $1,397,470.00.

The Chapter 7 Trustee conducted the initial § 341 meeting of creditors on April 9, 2003, and also conducted continued § 341 meetings on April 30, 2003, and September 10, 2003. The Debtors attended each of the three meetings and submitted themselves to examination by the Trustee, by the Plaintiff's attorney, and by the Plaintiff's accountant. (Plaintiff's Exhibits 31, 32, and 33; Debtors' Exhibits 1, 2, and 3).

The Trustee scheduled a further § 341 meeting for November of 2003. According to the Debtors, they appeared at the meeting, but the Trustee did not conduct any examination because the Debtors had not brought their 2001 and 2002 tax returns. (Transcript, pp. 125–26).

On November 10, 2003, the Trustee filed a Motion to Compel Turnover of Documents. (Main Case, Doc. 27). In the Motion, the Trustee asserted that she had requested certain documents from the Debtors, but that the documents had not been produced.

On March 1, 2004, the Court entered an Order Granting Motion to Compel Turnover of Documents. In the Order, the Court directed the Debtors to furnish the following documents to the Trustee:

(1) their 1999 income tax return and the backup documents for the return, (2) the backup documents for their 2000 income tax return, (3) their 2001 tax return and the backup documents for the return, (4) their 2002 income tax return and the backup documents for the return, (5) bank statements and cancelled checks for twelve months prepetition for all accounts as to which either of them had signing authority or held title, directly or beneficially, (6) all credit or charge card statements for twelve months prepetition, (7) bank statements and cancelled checks for the most recent twelve months of the Debtors' former business account at Peninsula Bank, (8) the lease for the Debtors' former business property, and (9) all documents reflecting the assignment or transfer of stock in ABC Rental & Sales, Inc.

(Main Case, Doc. 35). The Order further provided that the Debtors' discharge would be denied if they failed to produce the documents described in the Order.

On March 16, 2004, the Debtors delivered a box of documents to the Trustee. (Debtors' Exhibit 9).

On June 1, 2004, the Plaintiff filed a Motion to Enforce Order Requiring Debtors' Compliance. (Main Case, Doc. 41). In the Motion, the Plaintiff asserted that the Debtors did not produce all of the documents required by the March 1 Order, and that the Debtors' discharge should therefore be denied in accordance with the terms of the Order.

An Affidavit of Steven S. Oscher (Oscher) was attached to the Motion to Enforce Order. Oscher is a Certified Public Accountant who practices in the field of forensic accounting. In his Affidavit. Oscher stated that he had inspected copies of "two boxes full of documents" that the Debtors had delivered to the Trustee. (Affidavit, ¶ 6). A seven and one-half page inventory of the documents that he had reviewed is attached to the Affidavit.

Oscher's summary of the documents that the Debtors had provided is contained in paragraph 8 of his Affidavit:

a. We do have the 1999 income tax return for Glenn E. Harmon and April L. Harmon as well as form 1096 for Glenn E. Harmon d/b/a ABC Motor Company with copies of 1099–Misc for Vickie Harmon, Daniel Malinowski, Jr., Sandra Eggleston, Louis Boneta, Jr., and Andrew Taylor. Various handwritten notes and receipts are attached to these forms.

b. We do have the 2000 tax return for Glenn E. Harmon and April L. Harmon. The backup documentation which is attached to the return includes W–2s, 1099B, 1098, 1099INT, 1099MISC, 1099DIV.

c. We do not have the 2001 tax return.

d. We do not have the 2002 tax return.

e. We have June 15, 2002–July 15, 2002 and December 14, 2002–January 15, 2003 Crown Bank statements and copies of checks for account April Harmon # 0079801770. The remaining bank statements we have in our possession include some 1999, 2000, 2003, and 2004.

f. We do not have any credit card statements in our possession.

g. We have 11/15/03–12/15/03, 12/16/03–1/15/04, 7/16/03–8/15/03, 8/16/03–9/15/03, 9/16/03–10/15/03, 10/16/03–11/14/03, 1/16/04–2/13/04, 3/15/03–4/15/03 Crown Bank statements with copies of checks for account April Harmon # 0079801770. We do have some Glenn Harmon d/b/a ABC Motor Co. bank statements and reconciliation reports from Crown and Peninsula Bank, but these are from 1999–2000. We also have Glenn Harmon d/b/a ABC Drilling Company Bank of America statements from 2000.

h. We have sublease/payment agreement between ABC Enterprises and Hugh Paul d/b/a Allegany Drilling and sublease and payment agreement between ABC Enterprises and Southwest.

i. We do not have any documentation related to ABC Rental and Sales.

(Main Case, Doc. 41, Affidavit of Steven S. Oscher, ¶ 8). According to Oscher, "certain select information was provided as requested," but "it does not appear that the Debtors have fully complied with the Order Granting Motion to Compel Turnover of Documents." (Affidavit, ¶ 9).

On June 11, 2004, the Debtors provided copies of their 2001 and 2002 tax returns to the Trustee and to the Plaintiff. (Debtors' Exhibit 12). According to Oscher, however, the supporting documentation was not provided with the returns. (Transcript, pp. 37–38).

On July 7, 2004, the Court conducted a hearing on the Plaintiff's Motion to Enforce Order Requiring Debtors' Compli-

ance. No response to the Plaintiff's Motion or the accompanying Affidavit of Oscher was filed by the Debtors. Neither the Debtors' attorney of record nor the Debtors appeared at the hearing. At the hearing, the Plaintiff's attorney made an extensive presentation is support of he Motion. On July 14, 2004, the Court entered an Order (I) Granting Elrod's Motion to Enforce Order Requiring Debtors' Compliance and (II) Denying Debtors' Discharge. (Main Case, Doc. 46).

On March 9, 2005, the Court entered an Order setting aside the July 14 Order to the extent that it denied the Debtors' discharge. (Main Case, Doc. 58). Specifically, the prior Order was set aside because it was not entered in the context of an adversary proceeding as required by Rule 7001 and Rule 4004 of the Federal Rules of Bankruptcy Procedure, and because the record did not establish all of the elements of a cause of action to deny the Debtors' discharge under § 727(a) of the Bankruptcy Code.

The Plaintiff subsequently filed the Complaint Objecting to Discharge that is currently before the Court. In the four-Count Complaint, the Plaintiff asserts that the Debtors' discharge should be denied pursuant to § 727(a)(2), § 727(a)(3), § 727(a)(5), and § 727(a)(6) of the Bankruptcy Code.

### Discussion

■ Objections to a debtor's discharge should be construed liberally in favor of the debtor and strictly against the objecting party. *In re Harmon*, 324 B.R. 383, 389 (Bankr.M.D.Fla.2005)(citing *In re Ingalls*, 297 B.R. 543, 547 (Bankr.C.D.Ill. 2003)).

Further, Rule 4005 of the Federal Rules of Bankruptcy Procedure provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." F.R.Bankr.P. 4005.

### A. Count I—§ 727(a)(3)

■ Section 727(a)(3) of the Bankruptcy Code provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Under this section, the objecting party must show "(1) that the debtor failed to keep or preserve adequate records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Jacobowitz*, 309 B.R. 429, 436 (S.D.N.Y.2004)(quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir.1992)).

■ The objecting party has the burden of proving that the debtor's records are inadequate. Once the objecting party has made the initial showing, the burden shifts to the debtor to demonstrate that the failure to keep records was justified. *In re Jacobowitz*, 309 B.R. at 436.

■ The issue of whether the debtor's failure to keep or preserve recorded information was "justified" is essentially a question of whether such failure was reasonable under the circumstances. *In re Schifano*, 378 F.3d 60, 68–70 (1st Cir.2004).

■ In this case, the Plaintiff alleges that the Trustee asked the Debtors to produce documents, but that the Debtors did not provide documents that reflected their financial condition or business transactions. (Doc. 1, Complaint, ¶ 27).

It is undisputed that the Debtors provided "two boxes full of documents" to the Trustee. (Plaintiff's Exhibit 29, Affidavit of Steven S. Oscher, ¶ 6). The documents furnished by the Debtors included their 1999 and 2000 tax returns, their 2001 and 2002 tax returns (without supporting documentation), certain statements and copies of checks for April Harmon's Crown Bank account, certain statements for the Crown Bank and Peninsula Bank accounts of "Glenn Harmon d/b/a ABC Motor Co.," and certain sublease agreements with an entity called "ABC Enterprises." (Affidavit, ¶ 8).

The documents furnished by the Debtors are described in a seven and one-half page Index that was attached to the Affidavit of Steven S. Oscher. The Index reveals that the documents also included a General Ledger and Balance Sheet for ABC Motor Company, and numerous invoices and receipts related to the Debtor's automobile business. (Plaintiff's Exhibit 29).

The Court acknowledges that the records maintained and produced by the Debtors are haphazard and rudimentary. The "Bill of Sale" pursuant to which the inventory of ABC Motor Company was sold to Nyle Mellott, for example, and a "Sales Agreement" pursuant to which the Debtors agreed to sell certain real property to Melissa Young in 2002, are simplistic documents that appear to be drafted either by the Debtor or another layperson. (Plaintiff's Exhibits 20, 22).

The Debtors' attorney proffered that the Debtor has an 11 grade education. (Transcript, p. 24). He was a small business-

man who conducted his affairs through informal deals and barter, if necessary. With respect to the disposition of certain lots that he had "taken in on trade on automobiles," for example, the Debtor testified as follows:

The three lots, I traded to a Mr. David Scott Arp that owns Electro-Bake Auto Painting in Venice, Florida. And he did painting for us on automobiles. And the bill got up to a little over $10,000, I believe, and at the time I couldn't pay him. And he wanted paid, and so I asked him if he was interested in three lots. And he accepted the three lots to clean the bill up, so that's what we did.

(Transcript, p. 66). The Debtors' casual business practices are also revealed in the documents inventoried by Oscher, which include handwritten notes and bundles of invoices and receipts clipped together. (Plaintiff's Exhibit 29).

There is no evidence in the record, however, to indicate that the Debtors anticipated filing a bankruptcy case, or that they anticipated the need to verify their business dealings to a bankruptcy Trustee. On the contrary, the filing of the bankruptcy petition was precipitated by the unexpected entry of a judgment against them in an amount exceeding $1,300,000.00 on December 23, 2002. (Plaintiff's Exhibit 4; Transcript, p. 140).

To the extent that the Debtors' financial information is inadequate, therefore, the Court finds that the Debtors' failure to keep or preserve sufficient books and records is not unjustified under the circumstances of this case. The Debtor does not have an advanced education. He operated a small business through informal deals and arrangements, and produced two boxes of documents related to his business. He was not engaged in any prebankruptcy

planning in the years leading up to the petition, and filed the case only after the entry of an overwhelming judgment against him.

The Debtors' discharge should not be denied pursuant to § 727(a)(3) of the Bankruptcy Code.

### B. Count II—§ 727(a)(6)

 Section 727(a)(6) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(6) the debtor has *refused*, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify.

11 U.S.C. § 727(a)(6)(Emphasis supplied). "Mere 'failure' to obey a court order is insufficient under Section 727(a)(6)(A). (Citation omitted.) The plain language of the statute requires that the debtor refuse to obey a court order." *In re Costantini*, 201 B.R. 312, 316 (Bankr.M.D.Fla.1996)(Emphasis in original). Consequently, the "[d]enial of a discharge for refusal to obey a court order must be a result of 'wilful, intentional disobedience or dereliction' and not merely inadvertence or mistake." *In re Costantini*, 201 B.R. at 315–16 (quoting *In re Jones*, 490 F.2d 452, 456 (5th Cir.1974)).

 In this case, the Plaintiff contends that the Debtors refused to obey the Order Granting Motion to Compel Turnover of Documents entered on March 1, 2004. As set forth above, the Order directed the Debtors to furnish specified documents to the Trustee.

Steven S. Oscher used the Order as the starting point for his analysis of the documents produced by the Debtors. He ac-knowledged, for example, that the Debtors had provided documents and records that were responsive to the Order, and identi-fied those documents as including their 1999 and 2000 income tax returns with supporting materials, bank statements and checks for part of the year preceding the filing, certain bank statements and checks relating to the Debtors' business account, and a sublease agreement for the Debtors' business premises. (Plaintiff's Exhibit 29).

Oscher also identified specific documents that had not been produced in response to the Order. The "missing" documents con-sisted of the Debtors' 2001 and 2002 tax returns, the remainder of the bank state-ments for the year preceding the bank-ruptcy filing, credit card statements for the year preceding the bankruptcy filing, and documentation regarding ABC Rental and Sales.

The Debtors' 2001 and 2002 tax returns were produced to the Trustee and the Plaintiff after Oscher had completed his Affidavit, even though the supporting ma-terials were not provided. (Debtors' Ex-hibit 12, Transcript, pp. 37–38).

The Debtor testified that there were no charges on his credit cards in the year immediately preceding the bankruptcy pe-tition, and that he had attempted to obtain additional bank statements from Peninsula Bank, Bank of America, and Crown Bank, without success. (Transcript, pp. 107, 130).

With respect to ABC Rental and Sales, the Debtor testified that he was never an owner of the corporation, and was never in possession of the corporate records. (Transcript, pp. 117–18).

Under these circumstances, the Court finds that the Debtors did not "refuse" to obey the Order Granting Motion to Com-pel Turnover of Documents within the meaning of § 727(a)(6) of the Bankruptcy

Code. Although the Debtors may not have fully complied with the Order, their non-compliance does not amount to the "willful disobedience or dereliction" contemplated by the statute, and does not warrant denial of their discharge.

### C. Count III—§ 727(a)(5)

Section 727(a)(5) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). "There are two stages of proof under § 727(a)(5). (Citation omitted). First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. (Citation omitted). Second, if the party objecting to the discharge meets his burden, then the debtor is obligated to provide a satisfactory explanation of the loss." *In re Mantra*, 314 B.R. 723, 730 (Bankr.N.D.Ill.2004).

In this case, the Plaintiff alleges that the Debtors "failed to explain satisfactorily a loss of assets" in two respects.

First, the Plaintiff asserts that the Debtors failed to account for the proceeds of "several pieces of real property" that were transferred prepetition.

It is clear from the record that the Debtors had acquired and disposed of various properties in the years leading up to their bankruptcy petition. The evidence reveals, however, that the Debtors received net proceeds from only one such transfer. Specifically, the Debtors sold the "Placida Road" property in April of 2002, and received net proceeds from the sale in the amount of $3,100.00. (Plaintiff's Exhibit 22, Transcript, p. 112).

None of the other transfers produced any cash proceeds for the Debtors. With respect to the "Harvard Street" and "Tobago Way" property, for example, the Debtor testified that the Bank had claimed those properties as collateral after he breached his floor plan arrangement. Consequently, the Bank received all of the proceeds when he subsequently transferred the properties. (Plaintiff's Exhibits 19, 21; Transcript, pp. 64–65, 67, 70, 75–76). With respect to the Shadow Lane lots, the Debtor testified that he transferred the property to David Arp to satisfy an outstanding bill that the Debtors were unable to pay. (Transcript, pp. 66, 114).

Second, the Plaintiff asserts that the Debtors failed to account for any assets that they purchased using the credit cards that are reflected on their schedules. The Debtor testified that he had not used the credit cards in the year preceding the filing of the bankruptcy petition. (Transcript, p. 130), The evidence indicates that the credit card liability that is reflected on the schedules arose in connection with the operation of the Debtors' business before it was sold in February of 2001. (Debtors' Exhibit 19; Transcript, pp. 131–33). There is no evidence that the Debtors used their credit cards to make significant purchases of personal property.

The Plaintiff has not shown that the Debtors have failed to satisfactorily explain a loss of assets. The Debtors' discharge should not be denied under § 727(a)(5) of the Bankruptcy Code.

### D. Count IV—§ 727(a)(2)

Section 727(a)(2) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2). To prevail under § 727(a)(2), the objecting party must prove that (1) the debtor transferred or concealed property, (2) the property belonged to the debtor, and (3) the debtor intended to hinder, delay, or defraud a creditor by transferring or concealing the property. *In re Forness,* 334 B.R. 724, 731 (Bankr. M.D.Fla.2005). Denial of a discharge under this section requires proof of actual fraudulent intent. *In re Mantra,* 314 B.R. 723, 729 (Bankr.N.D.Ill.2004).

██ In this case, the Plaintiff alleges that the Debtors have concealed two assets: their ownership in ABC Rental & Sales, Inc., and a coin collection valued at $90,000.00. (Doc. 1, Complaint, ¶¶ 39, 40).

As to ABC Rental & Sales, the Debtor consistently testified that he has never had an ownership interest in the corporation. The Debtor sold the inventory of ABC Motor Company to Nyle Mellott in February of 2001, and Mr. Mellott incorporated the business as ABC Rental & Sales. The Debtor was originally an officer of ABC Rental & Sales, and he currently purchases and sells cars for ABC Rental & Sales as an independent contractor, but he never acquired an ownership interest in the business. (Transcript, pp. 118, 131, 136–37).

As to the coin collection, the Debtor testified that he had given the collection to Johnnie Elrod as collateral for a loan at some point between 1993 and 1996, and Mr. Elrod or one of his representatives obtained possession of the collection at that time. It appears that the Debtors have not seen the collection since surrendering it as collateral, and they believe that the collection is not recoverable in view of the judgment that has been entered in favor of Mr. Elrod's estate. (Transcript, pp. 138–41).

The Debtors' discharge should not be denied under § 727(a)(2) of the Bankruptcy Code on the basis that they concealed assets of the estate.

### Conclusion

The issue in this case is whether the discharge of the Debtors should be denied pursuant to § 727(a)(2), § 727(a)(3), § 727(a)(5), or § 727(a)(6) of the Bankruptcy Code. The evidence does not show that the Debtors unjustifiably failed to keep or preserve books or records, that the Debtors refused to obey an Order of the Court, that the Debtors failed to explain satisfactorily a loss of assets, or that the Debtors have concealed assets of the estate. The Debtors' discharge should not be denied.

Accordingly:

**IT IS ORDERED** that:

1. A separate Final Judgment on the Complaint Objecting to Discharge shall be entered in favor of the Debtors, Glenn E. Harmon and April Lynn Harmon, and against the Plaintiff, Byron Shinn, as Trustee of the Elrod Trust.

2. A Discharge shall be entered in the Chapter 7 case of the Debtors, Glenn E. Harmon and April Lynn Harmon.