**In the Matter of Norma Ann DOWELL, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Norma Ann DOWELL, Defendant.**

**Bankrutpcy No. 85–00285–3.
Adv. No. 85–0638–3.**

United States Bankruptcy Court,
W.D. Missouri, W.D.

April 15, 1986.

David DeTar Newbert, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Maurice B. Soltz, Soltz & Shankland, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING THE DEFENDANT'S DISCHARGE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

■ The plaintiff United States of America seeks denial of the defendant's discharge in bankruptcy pursuant to section 727(a)(6)(A) of the Bankruptcy Code, which provides for denial of discharge if it is shown that "the debtor has refused, in the case, ... to obey any lawful order of the court, other than an order to respond to a material question or to testify." [1] The complaint filed by the plaintiff on October 31, 1985, contends that the defendant failed and refused to obey the following orders of this court:

| Date of order | Subject of order |
|---|---|
| March 19, 1985 ..... | directing the debtor Norma Ann Dowell to file her statements of affairs and schedules within 20 days. |
| April 16, 1985 ....... | setting for hearing the issue of Norma Ann Dowell's failure to file schedules in accordance with the court's prior order and accordingly whether debtor should be adjudged in civil contempt of court. The hearing was set by the order of April 16, 1985, for May 8, 1985. The debtor did not appear for the hearing set for May 8, 1985. |

It is further alleged in the complaint that the debtor Norma Ann Dowell failed and

---

1. "A debtor will be denied a discharge if he has refused in the case to obey any lawful order of the court. This provision remains the same under the Code as it was under former Section 14c(6), and cases decided under that subsection of the former Act are therefore relevant in the interpretation of the Code. If the order is authorized in the words of, or by implication from, the statute, it is lawful. Contempt of court, provided the order ignored was lawful, becomes thus an available objection to discharge. Thus the refusal of the debtor in the course of a proceeding under chapter 7, to appear, after having been subpoenaed to give testimony, without any lawful excuse therefor is a refusal to obey a 'lawful order' and therefore has been held to justify the order of a court denying him a discharge." 4 Collier on Bankruptcy para. 727.09(2), p. 727–67 (15th ed. 1985).

refused to comply with the following orders of the district court: [2]

| Date of order | Subject of order |
| --- | --- |
| June 24, 1985 ....... | ordering the debtor to show cause within 20 days why she should not be adjudged in civil contempt for failure to comply with the bankruptcy court's above orders and why she should not be subjected to appropriate coercive measures to enforce those orders. The debtor Norma Ann Dowell did not repond to this order. |
| September 3, 1985 ... | adjudging Norma Ann Dowell in civil contempt of court and directing her to pay the sum of $250.00 within 15 days of the date of entry of the order unless debtor, within 15 days, brought herself into compliance with the bankruptcy court's orders by filing with the court her statement of affairs and schedules. Debtor did not comply with this order. |

2. The district court, in the instances complained of, was sitting as the court of bankruptcy under section 1334, Title 28, United States Code, and was thus the "court" referred to in the provisions of section 727(a)(6)(A) of the Bankruptcy Code.

3. The defendant denied knowledge of any of the prior proceedings in her answer to the within complaint, stating that she "neither admits nor denies paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 of Plaintiff's Application For Denial of Discharge because she has not received any correspondence from the Bankruptcy Court ... that the Court records show that she was involuntarily adjudged a bankrupt on March 19, 1985; that she became aware of this proceeding in January 1986 in Room 945 when attorney Gerry Handley and Debtor attended a Court appearance ... that Debtor further states that all proceedings mentioned in Plaintiff's Application were not known to her; that she did not seek or file Petition For Relief in Bankruptcy and that there never was personal service upon her of any pleading mentioned herein; hence she is unaware of the notices or orders mentioned in Plaintiff's Application ... Debtor further states that when she became aware of the proceedings she did hire Marice B. Soltz on January 13, 1986 and that she will file schedules on or before January 21, 1986." The files and records in this action show that an order was originally entered on November 20, 1985, setting it for hearing on January 3, 1986; that, on January 3, 1986, the defendant appeared in the company of

After joinder of the issues by the pleadings,[3] the matter came on before the bankruptcy court for hearing on January 23, 1986. With respect to each of the orders listed above, the plaintiff established that timely notice of each of the hearings and each of the duties to be performed by the debtor was given to the defendant Norma Ann Dowell by regular mail.[4] It was further shown that the notices and orders were timely deposited in the mail on each occasion [5] and that they were addressed correctly to the address at which the debtor admits during the time periods in question to residing with her husband.[6] The defendant's defense is a simple one: she claims that she did not receive any of the notices. Although they were mailed to her correct address, she admits, she did not receive any of them or know of any of their contents and she had no idea that she was involved in a bankruptcy proceeding [7] until she received, belatedly, she contends, the order setting a hearing on the within complaint to deny discharge.[8] She states that she

an attorney, Gerald Handley, who stated that he did not represent Mrs. Dowell, but had been asked to accompany her to court; that Mrs. Dowell then stated that her address had recently changed and that Mr. Dowell had only recently received the notice and advised her of the hearing. The court, because of the contention of inadequate time to prepare for the hearing, first continued it to January 15, 1986, and then to January 23, 1986, when it was at last held.

4. The evidence satisfactorily establishes that, with respect to the orders with which she is charged to have disobeyed, the defendant was given timely notice by first-class mail at 3521 Holmes. As of January 3, 1986, see note 3, *supra,* she testified that she had lived at that address from September 1977 to December 1985, and had moved from that address only "about three weeks ago."

5. This element of proof is not in any way disputed. The defendant only contends that she personally did not receive these mailings, nor any of the other mailings which would have advised her of the existence of the bankruptcy proceedings.

6. See note 4, *supra.*

7. See note 3, *supra.*

8. See note 3, *supra.*

knew that her husband was involved in a bankruptcy proceeding and assumed that all the matters which came in the mail from the bankruptcy court and the district court were solely concerned with that bankruptcy. She further states that her husband, although he must have been the person who received the mail and opened it, did not on any occasion confide to her any of the content of the orders of this court or the bankruptcy court until he let her know of the setting of the hearing on the within complaint objecting to her discharge in bankruptcy.[9] Although granted an explicit opportunity to do so,[10] the defendant declined to call her husband as a witness in this case. The files and records in this case show that no fewer than 11 different pleadings and orders were mailed to the defendant at the address which she admits to have been her home during the time periods in question and that none were returned.[11] Otherwise, the files and records in these cases purport to show that, at least on one occasion, the defendant filed a "waiver of exemptions" with the court on September 26, 1985, thus indicating that she knew or should have known of her status as a debtor in title 11 proceedings prior to the time of the initial order setting hearing in these objections to discharge, which is, according to her current contentions, the first she knew of the bankruptcy proceedings.[12]

## Conclusions of Law

■ As noted above, the pertinent section of the Bankruptcy Code warrants denial of discharge for intentional failure to obey a lawful order of the court. Under this section it is a ground for denial of discharge for a debtor to refuse to appear at a hearing when directed by the court to do so. See 4 Collier on Bankruptcy para. 727.09, p. 727–67 (15th ed. 1985). The failure and refusal must be, in order to warrant the denial of a discharge, intentional and not simply sporadic or inadvertent. Accordingly, an objection to discharge has "been denied when the debtor's failure to comply with an order was due to inadvertence and mistake, as opposed to wilful, intentional disobedience or dereliction." *Id.* In the action at bar, if the evidence establishes that the debtor knew or should have known of the multitude of orders and notices sent to her and disregarded them, it could hardly be said that her failure and refusal to attend—or to perform other duties imposed by the court—[13] was inadvertent or simply by mistake. A repeated failure and refusal to obey orders must, it seems, necessarily point to intention.

■ In this regard, the plaintiff has established by acceptable evidence that the orders in question were sent and received. Timely deposit in the regular mails is demonstrated by the evidence and this is sufficient to establish the proposition that the orders were timely received by the debtor. "Where notice has been mailed to the correct and current address and the item is not returned, delivery is presumed." *Mat-*

---

**9.** See note 3, *supra.*

**10.** At the conclusion of the hearing of January 23, 1986, counsel for the United States of America expressly requested that this court employ the inference to the effect that the husband's testimony would have been unfavorable. The court then gave the defendant an express opportunity to call Mr. Dowell as a witness, and the opportunity was declined. Nor was any objection made on the basis that Mr. Dowell's testimony would have violated the husband-wife privilege. But the rule, as applicable in civil cases such as that at bar, does not protect the failure to make any communication or the making of such communication as the law requires and which therefore cannot be privileged as a "confidential" communication.

**11.** These papers and documents are sufficiently described in the trial brief of the United States, which was filed in this action on January 23, 1986.

**12.** See note 3, *supra.* But she was herself described as a debtor in the "waiver of exemptions" filed on September 26, 1985.

**13.** The present promise of debtor's counsel to file schedules does not relieve her of the liability for her initial failure and refusal to file them, insofar as that initial failure and refusal may justify the denial of a discharge in bankruptcy.

*ter of Depoy,* 29 B.R. 471, 477 (Bkrtcy.N.D. Ind.1983). "Since notice by mail is complete upon mailing, Bankruptcy Rule 906(e), the requirement of this subdivision is satisfied if the notices it prescribes are deposited in the mail at least ten days before the event. There is a presumption that a letter properly directed and stamped, sent by post, will be properly transmitted and received." *In re Torres,* 15 B.R. 794, 797 (Bkrtcy.E.D.N.Y.1981).[14] The debtor does not offer any evidence directly to rebut this presumption. She, in fact, appears to predicate her defense on the assumption that her husband must have received all orders, pleadings and notices and that he failed over a long period of time to tell her about any of them until he told her, or otherwise arranged for her to find out, about the setting of the hearing on the within complaint objecting to discharge.[15] In this regard, however, the defendant's testimony is simply not credible. In part, this determination is based upon the appearance and demeanor of the defendant as a witness.[16] Further, it tends to be contradicted by the files and records in the case and the natural tendency of a husband to transmit information to a wife in which both of their interests might be vital. Finally, as observed above, the defendant was granted an explicit opportunity to call her husband as a witness and declined to do so. Under such circumstances, "(w)hen it would be natural under the circumstances for a party to call a particular witness ... and he fails to do so, tradition has allowed his adversary to use this failure as the basis for invoking an adverse inference." McCormick, Handbook of the Law of Evidence section 272, p. 656 (2d ed. 1972). This court therefore infers, under these circumstances that, if the debtor's husband were called to testify on this issue, he would testify in a manner which would not support the debtor's claim of non-notice.[17] This court therefore concludes that the defendant had timely notice of the orders that she disobeyed and that her disobedience was therefore intentional.[18]

■ It seemed to have been the contention of counsel for the debtor, in making his oral argument to the court after all of the evidence was in, that, because the matters involved were of such "great importance," notice by regular mail was insufficient; that the debtor was required to comply with the court's orders only if personally served with them or if otherwise granted notice of them by registered mail, return receipt requested. But none of the bankruptcy procedural rules which govern the matter makes any such requirement.[19] These current rules follow the reasoning that regular first class mail is a sufficient form of notice for each and every occasion in bankruptcy proceedings.[20] And this conclusion travels upon two lines of empirical evidence and observation as to the satisfactory character of notice by first-class mail. One is stated in the Advisory Committee's Note to the 1976 amendments to former Rule 704 of the Rules of Bankruptcy Procedure (now Rule 7004), in which it is noted that:

"'First-class mail postage prepaid' is substituted for 'mail requiring a signed receipt' as the authorized mode of making service by mail in the United States. Experience with the provision requiring a signed receipt has been unsatisfactory.

---

**14.** And see the considerations set out at pages 79–80 of the text of this memorandum, *infra.*

**15.** See note 3, *supra.*

**16.** On this issue, the determination of the trier of fact is ordinarily accorded great deference by the reviewing courts. See, e.g., *In re Windle,* 653 F.2d 328, 331 (8th Cir.1981).

**17.** See note 10, *infra.*

**18.** In this action, it would seem, where the party against whom the inference was drawn was explicitly warned of the possibility of its being drawn if the witness were not called and still declined to call the witness, none of the dangers otherwise inherent in drawing the inference seem present.

**19.** See Rules 7004 and 9006 of the Rules of Bankruptcy Procedure.

**20.** *Id.*

*Although the defendant's correct address is used for the mailing, the defendant is often unavailable to the delivering postman, either to sign or refuse delivery.* First-class mail suffices for service pursuant to Rule 5(b) of the Federal Rules of Appellate Procedure and for many other purposes." (Emphasis added.)

13 Collier on Bankruptcy para. 704.03, pp. 7–71, 7–72 (14th ed. 1977). And, in the instance of the district court's abovementioned order directing the debtor to show cause why she should not be adjudged in civil contempt of court, the facts of this case demonstrate the truth of that observation. For, in that instance, the court was unable to gain service upon the defendant by registered mail, return receipt requested.[21] Only regular first-class mail was efficacious. And the court must infer, in accordance with the foregoing principles, that the unreturned first-class-mail notice was received by the defendant. For the court to assume otherwise would be to upset the basic assumptions upon which the current provisions for bankruptcy notice are predicated and to do so in a case in which it is simply not credible to believe, as the defendant contends, that she did not receive or know of any of the multitude of notices and orders which were sent to her residence. In order for the court to believe itself warranted to dismiss the rule itself as inapplicable and unavailing, a better case than this must be presented to the effect that the workings of the rule have produced an injustice.

For the second empirical observation behind the first-class-mail is that "the practice ... in effect since 1976 ... has proven satisfactory." Advisory Committee Note to Rule 7004 of the Rules of Bankruptcy Procedure. In light of this satisfactory experience, this court is able to imagine that, on isolated occasions, service by first-class mail may not reach its destination. But it is quite difficult to imagine how none of the various notices and orders which are shown to have been properly mailed to the defendant could never have come to her attention. And the difficulty with which this is to be imagined is undoubtedly why her counsel, in closing argument, seemed simply to argue for a different form of notice than that which is required and authorized by the rules—one with respect to which service may well be a subject of more definitive evidence, but one which is also subject to evasion and abuse by the defendants.

The court has no alternative but to conclude that the credible evidence overwhelmingly shows that the defendant intentionally refused to obey orders of this court and the district court and that grounds therefore exist for denial of discharge in bankruptcy. The abuse of the system has been such, furthermore, that the bankruptcy court must exercise its grant of discretion in favor of denying the defendant's discharge in bankruptcy.[22]

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that, on the plaintiff's complaint therefor, the defendant's discharge in bankruptcy be, and it is hereby, denied.

---

**21.** This was demonstrated through the evidence presented by the defendant herself in the course of the trial of the merits of this action.

**22.** "It is commonly said that even when grounds for the denial of discharge exist, it is still within the discretion of the bankruptcy court as to whether discharge should actually be denied." *Matter of Borron,* 29 B.R. 122, 128, n. 12 (Bkrtcy.W.D.Mo.1983).