**In re Harold BARMAN and Evelyn Barman, Debtors.**

**Shelia J. Solomon, Trustee Plaintiff,**

**v.**

**Harold Barman and Evelyn Barman, Defendants.**

**Bankruptcy No. 98–53776–SWR.**

**Adversary No. 98–4812.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

June 18, 1999.

Thomas Morris, West Bloomfield, MI, for plaintiff.

Frank Fortescue, Detroit, MI, for defendants.

*Opinion Granting Trustee's Motion for Summary Judgment*

STEVEN W. RHODES, Bankruptcy Judge.

In this adversary proceeding, the trustee objects to the discharge of the debtors, Harold and Evelyn Barman, on the grounds that they refused to obey a court order in another bankruptcy case concerning an insider. 11 U.S.C. § 727(a)(7). The matter is before the Court on the

trustee's motion for summary judgment. The debtors oppose the motion, asserting that there are genuine issues of material fact regarding: (1) whether they had notice of the order; (2) whether the case in which the order was entered concerned an insider; (3) whether they violated the court order, and (4) whether their violation of the order was willful. The Court concludes there are no genuine issues of material fact, that all of the elements of § 727(a)(7) are met in this case, that the trustee's motion for summary judgment should be granted, and that the debtors' discharge should be denied.

## I. *Facts.*

This adversary proceeding has its origins in a related bankruptcy case and adversary proceeding in the United States Bankruptcy Court for the District of South Carolina. That bankruptcy case was commenced when creditors of BHB Enterprises, L.L.C., a South Carolina limited liability company, filed an involuntary petition.

The trustee of BHB then filed an adversary proceeding against the debtors in this case, as well as their son, Norman Barman, and others closely associated with the ownership and operation of BHB. In that adversary proceeding, the bankruptcy court entered an *ex parte* temporary restraining order ("TRO"), based on the trustee's assertion that "certain of the defendants, namely Norman Barman and Harold and Evelyn Barman ... intend[ed] to remove from the State of South Carolina all of their possessions before the end of year, and to liquidate ... assets owned by any of them with intent of removing those assets from the state," and, more specifically, that Norman Barman and Harold Barman "intend[ed] to liquidate the home located in Georgetown, South Carolina." (TRO, dated December 5, 1997.) The TRO restrained, prohibited and enjoined "Defendants, their agents, employees, and assignees, from ... transferring, encumbering, selling, conveying, liquidating, concealing, altering, or otherwise affecting any asset owned, in whole or in part, by any Defendant."

Later, with the consent of the attorney representing Harold and Evelyn Barman, the bankruptcy court entered an Order for Preliminary Injunction ("First Consent Order"). This order restated the same prohibiting language of the TRO, this time, with specific reference to certain real property located at 377 Dune Oaks Drive, DeBordieu Colony, Pawley's Island, Georgetown County ("the property"). It also specifically stated that Harold and Evelyn Barman were subject to it. Although only Norman Barman was present at the preliminary injunction hearing, the attorney for Evelyn and Harold Barman represented to the bankruptcy court that his clients had agreed and consented to the terms of the preliminary injunction.

The First Consent Order was followed by the entry of another Consent Order for Preliminary Injunction ("Second Consent Order"), which stated explicitly that "[t]he parties ha[d] agreed, and defendants Harold Barman and Evelyn Barman expressly consented" to extending the terms of the preliminary injunction until trial. The attorney for Harold and Evelyn Barman signed the Second Consent Order with the notation "by express permission."

The debtors violated the Second Consent Order on May 27, 1998, when they refinanced the property. From this loan transaction, the debtors received $131,601.19 in net proceeds, which they caused to be wired to their joint bank account in Michigan. They then withdrew these proceeds in cash in small denominations over a period of seven to ten days, and gave the cash to their son, Norman Barman. On August 4, 1998, Harold and Evelyn Barman filed this Chapter 7 voluntary petition.

On September 25, 1998, the bankruptcy court in South Carolina entered an order of contempt against Norman Barman for his involvement in the refinancing of the property and in the transfer and receipt of

the proceeds from it.[1] However, the adversary proceeding against Harold and Evelyn Barman in the BHB bankruptcy was stayed as a result of their filing of this bankruptcy case. 11 U.S.C. § 362(a). Norman Barman has failed and refused to turn over the proceeds in spite of the of contempt order, which requires him to do so.

## II. *Motion for Summary Judgment Standard*

Bankruptcy Rule 7056 makes the motion for summary judgment standard of Federal Rule of Civil Procedure 56 applicable to adversary proceedings. Federal Rule 56 provides, in relevant part, that the motion shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact identified by the controlling substantive law as essential to a judgment in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989). Once the movant has met this burden, the burden shifts to the nonmoving party to set forth specific facts that show that a genuine factual dispute exists for trial. *Matsushita Elec-*

*tric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (citation omitted). In determining whether each party has met its burden, a court must view all facts and all reasonable inferences to be drawn from those facts in a light most favorable to the party who opposes the motion. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the court should keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

## III. *Section 727(a)(7) of the Bankruptcy Code*

11 U.S.C. § 727(a)(7) provides:

The court shall grant the debtor a discharge, unless ... the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the cases, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

11 U.S.C. § 727(a)(7) (1993).

Under § 727(a)(6) and (7), the initial burden of presenting evidence, as well as the ultimate burden of persuasion, rests on the objecting party. 6 *Collier on Bankruptcy,* ¶ 727.09[1] at 727–49 (15th ed.1999); Fed.R.Bankr.P. 4005. The objecting party must establish the facts warranting denial of the discharge by a preponderance of the evidence. *Barclays/Am. Bus. Credit, Inc. v. Adams, (In re Adams),* 31 F.3d 389 (6th Cir.

---

1. At the meeting of creditors, the debtors testified that Norman Barman handled all the negotiations and arrangements regarding the refinancing of the property, and that he accompanied them on several occasions when they withdrew the proceeds from their joint bank account. The debtors testified further that they gave all the proceeds of the loan transaction to Norman Barman.

1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995).

In this case, the Court notes that the debtors do not dispute the existence of the Second Consent Order in the South Carolina bankruptcy case or the lawfulness of that order. The debtors assert that BHB is not an insider of theirs, so that the order was not entered in connection with a case concerning an insider, as required under § 727(a)(7). They also assert that they did not violate the order, at least not willfully so, and that they did not have notice of the order.

### IV. *Whether BHB Is an Insider of the Debtors*

On this issue, the debtors do not dispute that they are insiders of BHB or that Harold Barman is one of its three members. The debtors do, however, deny that BHB is an insider of theirs. The Court concludes that the undisputed facts compel the conclusion that BHB is an insider of the debtors.

Section 101(31) of the Bankruptcy Code provides that an " 'insider' *includes* [,] . . . if the debtor is an individual[,] . . . [a] corporation of which the debtor is a director, officer or person in control . . . [and an] affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(A)(iv), (E) (1993) (emphasis added).

■ Section 102(3) of the Bankruptcy Code makes it clear that " 'includes' and 'including' are not limiting." 11 U.S.C. § 102(3) (1993). In *Jahn v. Economy Leasing, Inc. (In re Henderson),* 96 B.R. 820, 824–25 (Bankr.E.D.Tenn.1989) (citing *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 125, n. 1, 55 S.Ct. 60, 61, n. 1, 79 L.Ed. 232 (1934)), the court explained:

"[I]nsider" [under the Bankruptcy Code] is defined by way of examples. The examples, however, are not meant to be exhaustive. When the verb "includes" is used to define a particular word, it usually imports a general class with only some the class' particular instances specified in the definition.

. . .

According to the legislative history accompanying the statutory definition of insider, "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms' length with the debtor."

*Id.* (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 312, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6269).

An "affiliate," which is included under the definition of "insider" in the Code, includes a:

corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote[.]

11 U.S.C. § 101(2)(B) (1993).

■ The Court concludes that a limited liability company, such as BHB, is sufficiently analogous to a corporation that for purposes of determining insiders, it is appropriate to consider the similar principles. Significantly, under South Carolina law, the members of limited liability companies have voting rights. *See, e.g.,* South Carolina Limited Liability Company Act, 1994 Act No. 448 § 1, eff. June 16, 1994, (codified at S.C.Code Ann. §§ 33–43–101 through 33–43–1409 (West Supp.1998)) *repealed by* 1996 Act No. 343, § 3 eff. January 1, 2001, (more particularly, § 33–43–403 concerning voting), and the Uniform Limited Liability Company Act of 1996,

1996 Act No. 343, § 2 eff. June 1, 1996, *repealing* 1994 Act No. 448, § 1, eff. January 1, 2001 (codified at S.C.Code Ann. §§ 33–44–101 through 33–44–1207 (West Supp.1998)) (and more particularly § 33–44–404 relating to management of the limited liability company).

■ The Court concludes that BHB is an insider of both Harold and Evelyn Barman. Their status as insiders of BHB, which they admit, makes their relationship sufficiently close that any dealings between them and BHB could not be said to be at arms length and would require close scrutiny. Moreover, BHB is an "affiliate" (and thus an insider) of Harold Barman because he owned, or directly or indirectly controlled, one third of the voting rights in BHB. BHB is also within the statutory definition of an "insider" of Harold Barman because he is one of its three members, and thus holds a position that is analogous to that of a "director, officer or person in control" of BHB. 11 U.S.C. § 101(31)(A)(iv).

## V. *Notice*

■ The debtors deny that they had notice of the Second Consent Order. There are no genuine issues of fact regarding representation of the debtors by Henry Flynn Griffin, III, in the BHB bankruptcy. Griffin represented to the South Carolina bankruptcy court that he was the attorney for the debtors, and actively represented Harold Barman in a deposition given in that case. Moreover, Harold Barman affirmatively testified at that deposition that Griffin was his attorney in the case. It is also undisputed that Griffin signed the Second Consent Order as "Attorneys for Defendants" and with a notation after his signature indicating that he had the permission of his clients to sign. The Second Consent Order also stated explicitly that the debtors expressly consented to extend the preliminary injunction until trial. These facts establish that Griffin was the debtors' attorney in the South Carolina bankruptcy court.

■ "The general rule for imputing an agent's notice or knowledge is applicable in bankruptcy cases." *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir.1982). "The general rule is that . . . [n]otice or knowledge is imputed where the agent is acting within the scope of his authority and the knowledge pertains to matters within the scope of the agent's authority." *Id.* (citing *Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956 (1923)).

■ It is undisputed that Griffin, as attorney for the debtors, signed the Second Consent Order with the their express agreement and consent, and that he was acting within the scope of his authority to act on their behalf. Based on these facts, the Court finds that the debtors had notice of the Second Consent Order.

## VI. *Refusal to Obey a Court Order*

■ Failure to comply with a court order, standing alone, is not the equivalent of "refusal" under § 727(a)(6).

The failure and refusal must be, in order to warrant the denial of a discharge, intentional and not simply sporadic or inadvertent. Accordingly, an objection to discharge has "been denied when the debtor's failure to comply with an order was due to inadvertence and mistake, as opposed to wilful, intentional disobedience or dereliction." . . . [I]f the evidence establishes that the debtor knew or should have known of the multitude of orders and notices sent to her and disregarded them, it could hardly be said that her failure and refusal . . . was inadvertent or simply by mistake.

*United States v. Dowell (In re Dowell)*, 61 B.R. 75, 78 (Bankr.W.D.Mo.1986) (quoting 4 *Collier on Bankruptcy*, ¶ 727.09 at p. 727–67 (15th ed.1985)) (inferring that the debtor intentionally disobeyed a lawful court order from the facts that notice of the orders had been mailed to her current and correct address without being returned and were therefore presumed re-

ceived by her, and that she failed to obey the orders). See *also In re Jarrell*, 129 B.R. 29, 33 (Bankr.D.Del.1991) ("The use of the word 'refused' in § 727(a)(6)(A) must be distinguished from the use of the word 'failed' elsewhere in § 727(a). Bankruptcy law recognizes that mere failure does not equal refusal where the creditor does not show wilful or intentional disobedience, as opposed to inability, inadvertence or mistake.") (citing 4 *Collier on Bankruptcy*, ¶ 727.09[2] (15th ed.1979) (citing cases)).

■ The Court concludes that there is no genuine issue of material fact concerning the debtors' willful violation of the preliminary injunction in the South Carolina bankruptcy case. The closing documents unequivocally establish the debtors' participation in the refinancing of the property. Both debtors signed the closing documents. That Harold Barman did not go to South Carolina to participate in the closing is irrelevant because his participation in the transaction was both substantial and necessary. He signed the documents and received and transferred the proceeds.

Moreover, both debtors participated in wiring the proceeds from this transaction to their joint bank account, and both debtors withdrew the proceeds and gave them to Norman Barman.

These actions were in direct violation of the Second Consent Order. Therefore, because the debtors received notice of the Second Consent Order, their intentional act of refinancing the property would satisfy the willfulness element of § 727(a)(6), in the absence of any justifiable excuse.

## VII. *Defenses*

### A.

■ The record establishes that the debtors had no justifiable excuse for violating the Second Consent Order. The terms of that order are definite and specific. It states that the preliminary injunction was extended until trial, and, explicitly, that the debtors were forbidden from taking any action whatsoever with regard to the property, no matter who owned it.[2] The language of the preliminary injunction is plain, straightforward, and for the most part free of legalese. A lay person would have no difficulty understanding that it prohibited the refinancing of the subject property. Therefore, the debtors cannot credibly claim a mistaken belief that the Second Consent Order did not apply to them or to the property, or that it did not prohibit them from refinancing the property.

### B.

Evelyn Barman attempts to raise another defense, particular to herself. She claims that she was legally incompetent when she participated in refinancing the property. In support of her claim, Evelyn Barman submitted two affidavits, one from her husband, Harold Barman, and another from her personal physician. The Court concludes that neither affidavit is sufficient to raise a genuine issue of material fact as to Evelyn Barman's legal capacity at the time of she participated in refinancing the property.

Harold Barman's affidavit states, in relevant part, "Affiant's wife, Evelyn Barman suffers from a severe memory deficiency and even though she takes prescribed medication for it, she had no present knowledge on May 27, 1998, that her actions in executing the mortgage were in violation of any Court order." (April 13, 1999 Affidavit of Harold Barman, ¶ 12.)

---

**2.** The debtors have argued that they were not the equitable owners of the property, and that rather, they held it in a fiduciary capacity in trust for their son, Norman Barman. Therefore, according to the debtors, they were bound to follow the instructions of their son with regard to the property and did not violate the preliminary injunction. There is no merit to this argument. It is irrelevant in what capacity the property was held. The preliminary injunction did not rely in any way on the debtors' ownership of the property for its applicability. Therefore, the Court need not address the trust issue.

■ Assuming, without deciding, that this evidence would be admissible, the statements in the affidavit regarding Evelyn Barman's mental condition do not excuse her violation of the Second Consent Order. This affidavit raises the subtle distinction between intending the act that violates a court order and intending to violate a court order. Such a distinction is similar to that drawn in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977 140 L.Ed.2d 90 (1998) in reference to the "willful" element under § 523(a)(6). However, the reasoning in *Geiger* is inapplicable to this case. *Geiger* concluded that for a debt to be nondischargeable under that section, the debtor must have intended the injury, and not merely intended the act that resulted in injury. In so holding, the Supreme Court relied on the specific language of the § 523(a)(6) in which "willful" modified "injury." *Id.*

There is no comparable language in § 727(a)(6) that would justify a similar construction of the "willfulness" requirement that has been read into this provision by the case law. Moreover, under other provisions of the Bankruptcy Code, willfulness is established from the intent to do the act and intent to injure is not required. For example, under § 362(h), which provides for damages for violations of the automatic stay, an individual need only show that the person intended the act that was a violation of the stay, and not that the person intended to violate the automatic stay or cause injury. *See, e.g., In re Bennett*, 135 B.R. 72, 75–76 (Bankr.S.D.Ohio 1992).

Likewise, under § 727(a)(6), all that is required is that Evelyn Barman intended to refinance the property—the act that violated the court order. Harold Barman's affidavit does not state that Evelyn Barman did not intend to refinance the property or that she did not know what she was doing. It only states that she had no present knowledge that she violated a court order. Therefore, it falls short of negating the mental state required under

§ 727(a)(6) and does not provide an excuse for her actions.

■ Similarly, the affidavit from her personal physician is insufficient to provide her with a defense. The physician stated in his affidavit, in pertinent part, "[t]hat it is his opinion that Evelyn Barman is not competent to testify in a Court of law for the reason that her memory skills are insufficient[, and t]hat Evelyn Barman is not competent to transact complex business affairs such as a mortgage closing." (April 29, 1999 Affidavit of Abraham Solomon, MD, ¶¶ 4–5.)

The pertinent time frame is May 27, 1998, the date of the refinancing, and the following seven to ten day time period, during which the debtors withdrew funds from their joint bank account and transferred them to Norman Barman. The doctor's affidavit simply does not state an opinion regarding Evelyn Barman's mental state during this time period. Therefore, it too is insufficient to serve as a defense to her violation of the preliminary injunction.

Additionally, at the hearing on the trustee's motion for summary judgment, the debtors' attorney retreated from his claim regarding Evelyn Barman's competence. At this hearing, the debtors' attorney conceded that Evelyn Barman's mental condition is not constant, that she was competent each time he met with her, and that he had not thought to question her competence to file this bankruptcy case.

The debtors, as the parties opposing summary judgment, have failed to meet their burden of coming forward with specific facts supported by evidence in the record that would create a genuine issue of material fact for trial. Their mere allegations, with "no significant probative evidence to support" their position, are insufficient. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.)

## VIII. Factors Weighed in Exercising the Court's Discretion

Sections 727(a)(6) and (a)(7) allow a court to deny a debtor's discharge if it finds that the debtor refused to obey a lawful court order in another bankruptcy case concerning an insider, but such a finding does not mandate denying discharge. *Concannon v. Costantini (In re Costantini)*, 201 B.R. 312, 316 (Bankr. M.D.Fla.1996). In exercising its discretion, the bankruptcy court must balance the policy in favor of liberally applying the Bankruptcy Code to grant discharge to the honest debtor against the policy of denying relief to debtors who intentionally engage in dishonest practices and violate the Bankruptcy Code provision. *See, e.g., Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D.Mich. 1997); *Hunter v. Shoup (In re Shoup)*, 214 B.R. 166, 172 (Bankr.N.D.Ohio 1997). Factors to consider in deciding whether to deny the discharge based on a refusal to obey a court order are: the existence or absence of a justifiable excuse; the injury resulting to creditors; the ability of the debtor to "make amends;" the detriment to the bankruptcy's proceedings and the court's dignity; and the potential injury to the debtor in the event of denial of discharge. *Costantini*, 201 B.R. at 316 (quoting *Friendly Fin. Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974)).

The Court concludes that facts of this case warrant denying the debtors' discharge. Their willful refusal to obey the preliminary injunction directly caused the very harm that the court sought to avoid by entering the preliminary injunction—the removal of a valuable asset from the reach of creditors. The temporary restraining order, which formed the basis for the preliminary injunction, was expressly premised on the trustee's belief and concern that the debtors and their son would act to the prejudice of creditors by disposing of the property. Creditors have been significantly harmed by the removal of a substantial sum of money from the BHB bankruptcy estate.

Further, the debtors are without the present ability to remedy the injury they caused to the creditors by their actions. The proceeds from the refinancing are no longer in their control because they transferred them to their son, who refuses to turn them over to the trustee and has been held in contempt of court. Therefore, the harm to creditors remains and could possibly be permanent.

The debtors' actions have been detrimental to the South Carolina bankruptcy proceedings and the authority of the court, because they have prevented the court from carrying out the goal of the Bankruptcy Code "to conserve and protect the assets ... of the estate" for the benefit of creditors. *Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66 F.3d 1436, 1442 (6th Cir.1995). In addition, the debtors' filing of this bankruptcy case has prevented the South Carolina bankruptcy court from pursing contempt proceedings against them for violating the preliminary injunction.

The debtors have not presented any justifiable excuse for their direct affront to the authority of the South Carolina bankruptcy court. The debtors' proffered defenses have already been discussed and rejected. The Court is left with the firm conviction that the debtors showed a callous disregard for the authority of the South Carolina bankruptcy court.

Finally, although the debtors will suffer harm if discharge is denied, this injury is a direct result of their own indefensible activities. "Courts recognize ... that 'a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor.'" *Wazeter*, 209 B.R. at 226 (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996)). The Court finds that the debtors' actions in relation to the BHB bankruptcy case were dishonest and that the debtors are do not

deserve the privileges and protections of the Bankruptcy Code.

### IX. *Conclusion*

After balancing the relevant considerations, the Court concludes that the debtors' discharge should be denied, based on their willful refusal to obey the preliminary injunction issued by the South Carolina bankruptcy court. An appropriate order will be entered.