In re Douglas SHARPE, Debtor.

The Provident Bank, Plaintiff,

v.

Douglas Sharpe, Defendant.

Bankruptcy No. 8:02–bk–25785–ALP.
Adversary No. 03–00208.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 28, 2003.

572

Christopher C. Morrison, Dooley & Drake, P.A., Sarasota, FL, for plaintiff.

Joryn Jenkins, Joryn, Jenkins & Assoc., Shirley C. Arcuri, Tampa, FL, for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in the Chapter 7 case of Douglas M. Sharpe (Debtor) is a challenge to the Debtor's right to a discharge by The Provident Bank (Provident). Provident filed a two-count complaint thereby initiating the above-referenced Adversary Proceeding. In due course, the Debtor filed his Answer admitting and denying some of the allegations set forth in the Complaint.

In Count I, Provident sought a determination that the debt owed by the Debtor to Provident was nondischargeable based on Section 523(a)(4) of the Code; however, by Order of this Court entered on July 29, 2003, Count I was dismissed. Accordingly, this Court shall only consider the claim in Count II. In Count II, Provident seeks an

order denying the Debtor's discharge based on Section 727(a)(7) of the Code.

In the Complaint, Provident contends that the Debtor wrongfully appropriated funds from the Debtor–in–Possession (DIP) account of The National Collector, Inc. (National), an entity that was in Chapter 11, that were due to Provident under the terms of this Court's Order on Provident's Motion to Prohibit Use of Cash Collateral and on Motion for Relief from Stay in National's Bankruptcy Case, entered on June 5, 2002. Provident contends that the Debtor used those funds for his own personal benefit during the pendency of National's Chapter 11 case with the intent to hinder, delay, or defraud Provident.

Accordingly, this Court must determine whether the Debtor's refusal to obey this Court's Order in National's bankruptcy case is sufficient to deny the Debtor his discharge in his individual Chapter 7 case. To place this controversy in proper focus, it should be helpful to summarize the facts and circumstances that are relevant to the issue before this Court.

Prior to the commencement of the trial, the parties filed a Joint Stipulation of Undisputed Facts (Doc. No. 17). The Debtor stipulated that on September 19, 2000, he entered into a loan agreement with Provident as President of National for a United States Small Business Administration guaranteed loan (SBA Loan). (Jt.Stip.¶ 4). On September 19, 2000, National executed and delivered a promissory note in favor of Provident for the SBA Loan in the original principal amount of $700,000 (SBA Note). (Jt.Stip.¶ 5). Furthermore, the Debtor stipulated that on July 24, 2000, National executed and delivered a promissory note to Provident in the original principal amount of $100,000 (Provident Note). (Jt.Stip.¶ 8).

Also on September 19, 2000, National executed and delivered to Provident a security agreement to secure the SBA and Provident Notes, giving Provident a security interest in the collateral described, including, but not limited to, equipment and inventory of National, until payment of the amount due in full on the SBA Note, together with interest and other fees described in the Note. On September 21, 2002, Provident perfected its security interest in the collateral by filing its UCC–1 Financing Statement with the Florida Secretary of State. (Jt. Stip. ¶ s 11–15).

National defaulted under the terms of the SBA Note and the Provident Note by failing to make payments due on February 19, 2002, and on all subsequent payments required to be paid by the Notes. Provident elected to accelerate the amount due on both the SBA Note and the Provident Note.

On May 3, 2002, National filed its voluntary Petition for Relief (the National Bankruptcy) under Chapter 11 of the Bankruptcy Code. On May 7, 2002, this Court entered an Order in National's Bankruptcy case authorizing National, as the DIP, to continue business (May 7th Order). The May 7th Order provided in paragraph 2 as follows:

> The debtor-in-possession be, and hereby is authorized, subject to the control of this Court, to operate its business and manage its property until further order of this Court; to employ, discharge and fix the salaries and compensation of all managers, agents and employees, *except* salaries and compensation of the debtor(s), attorney(s) for the debtor(s) and the officers, directors, stockholders and insiders, which compensation will be determined by this Court.

(Emphasis added).

On May 28, 2002, this Court entered an Interim Order Regarding Cash Collateral

and Relief from Stay in National's Chapter 11 case, authorizing National to use the cash collateral of Provident with certain restrictions (May 28th Order). The terms imposed by the May 28th Order authorized National, as the DIP, to withdraw from its existing deposit account maintained at Provident an amount sufficient to pay one week's payroll for the employees of the DIP, but not to pay officers of the DIP absent a separate order from the Court.

On June 5, 2002, this Court entered its Order authorizing National, as the DIP, to use up to $42,000 of the cash collateral per month to pay its regular and ordinary business expenses (June 5th Order). The June 5th Order further provided that if National received monthly income exceeding $42,000 in the ordinary course of its business, seventy-five (75%) percent of all such income was to be paid to Provident.

On June 14, 2002, National filed a Motion to Authorize Payment of Compensation to Shareholders, which included the Debtor. However, because National's Chapter 11 case was dismissed on July 8, 2002, this Court did not rule on National's Motion. On December 31, 2002, the Debtor filed his individual Petition for Relief under Chapter 7 of the Bankruptcy Code.

The parties stipulated that during the pendency of National's Chapter 11 case, the Debtor wrote, endorsed, and negotiated from National's DIP account the following checks, totaling more than $54,000:

1) On May 14, 2002, check number 1001, payable to Chase Automotive Finance in the amount of $650.49.

2) On May 22, 2002, check number 1014, payable to Cash in the amount of $975.26.

3) On May 22, 2002, check number 1015, payable to Cash in the amount of $184.00.

4) On May 23, 2002, a check payable to Cash in the amount of $546.64.

5) On May 28, 2002, check number 1022, payable to Cash in the amount of $1,000.00.

6) On May 28, 2002, check number 1020, payable to Serendipity CC in the amount of $237.15.

7) On May 27, 2002, check number 1023, payable to Nextel in the amount of $203.31.

8) On May 28, 2002, check number 1024, payable to Cash in the amount of $1,000.00.

9) On June 4, 2002, check number 1032, payable to the City of Tampa Parking Division in the amount of $15.00.

10) On June 6, 2002, a check payable to Cash in the amount of $5,000.00.

11) On June 7, 2002, check number 1044, payable to Cash in the amount of $1,300.00.

12) On June 10, 2002, check number 1042, payable to Cash in the amount of $2,000.00.

13) On June 11, 2002, check number 1043, payable to Serendipity CC in the amount of $111.28.

14) On June 13, 2002, check number 2014, payable to Cash in the amount of $5,000.00.

15) On June 13, 2002, check number 2015, payable to Debtor in the amount of $4,500.00.

16) On June 14, 2002, check number 2021, payable to Chase in the amount of $650.49.

17) On June 17, 2002, check number 2023, payable to Cash in the amount of $5,000.00.

18) On June 17, 2002, check number 2024, payable to Cash in the amount of $4,500.00.

19) On June 18, 2002, check number 2030, payable to Cash in the amount of $7,200.00.

20) On June 18, 2002, check number 2032, payable to Cash in the amount of $6,700.00.

21) On July 25, 2002, check number 2041, payable to Serendipity CC in the amount of $263.61 for payment of Debtor's membership dues.

22) On July 25, 2002, check number 2042, payable to Cash in the amount of $1,500.00.

23) On August 15, 2002, check number 2048, payable to Cash in the amount of $5,800.00.

24) On August 15, 2002, check number 2049, payable to Cash in the amount of $250.00.

(Jt. Stip. ¶ s 28–51).

It is the contention of Provident that the Debtor should be denied his discharge in this Chapter 7 case because the Debtor wrongfully appropriated funds from National's DIP account that were due to Provident under the terms of this Court's June 5th Order in National's Bankruptcy case, by using National's funds for his own personal benefit. (¶ 36 of Complaint). In support of this proposition, Provident contends that the checks written and endorsed by the Debtor from National's DIP account made payable: (1) to Chase were for the Debtor's personal automobile; (2) to Serendipity CC were for the Debtor's personal membership at the Sarasota tennis club; (3) to the City of Tampa was for the Debtor's personal parking ticket; and (4) to "cash" were transferred to petty cash, out of which the Debtor paid himself a salary, violating the May 7th Order.

In opposition, the Debtor contends that the funds were disbursed from National's DIP account in accordance with the June 5th Order that approved National's use of cash collateral to pay its regular and ordinary business expenses and were not disbursed for his personal benefit. In support of this contention, the Debtor testified at trial that National had paid for his personal automobile, which the Debtor used for corporate business, since 1997. The Debtor further testified that his membership at Serendipity CC was not only for his own personal purpose, but also for business purposes, such as client development. The Debtor also contends that he disclosed to the United States Trustee all checks and he accounted for all funds that were disbursed from National's DIP account.

As it relates to the disbursements from National's DIP account for his compensation as an employee of National, the Debtor testified that he remembered National submitting a Motion Requesting Compensation, but admitted he never saw an order authorizing the payment of his compensation. The Debtor further testified that he did not think anyone would object to the payments for his compensation as an employee of National as he did not pay himself until he received approval both from his attorney and the U.S. Trustee.

It is clear under F.R.B.P. 4005 that in a proceeding challenging a Debtor's right to a discharge, the burden is on the moving party to establish with the requisite degree of proof that a debtor is guilty of conduct condemned by one of the several specific provisions of Section 727 of the Code. However, the burden is no longer clear and convincing evidence, but rather the mere preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

As noted earlier, Provident seeks to deny the discharge pursuant to Section 727(a)(7) of the Code. This Section provides as follows:

The court shall grant a debtor a discharge, unless—

the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this Title or under the Bankruptcy Act, concerning an insider.

Section 101(31) of the Code provides that an " 'insider' includes...if the debtor is an individual...[a] corporation of which the debtor is a director, officer or person in control."

Accordingly, this Court must determine if the Debtor's conduct falls within one of the subsections provided for in Section 727(a)(7) of the Code, which are summarized as follows:

727(a)(2): the debtor, with intent to hinder, delay or defraud a creditor has transferred, removed or destroyed property of the debtor or the estate;

727(a)(3): the debtor has concealed, destroyed or mutilated books and records;

727(a)(4): the debtor has knowingly and fraudulently made a false oath or account;

727(a)(5): the debtor has failed to explain loss of assets; and

727(a)(6)(A): the debtor has refused to obey any lawful order of the court.

■ It is without dispute that the Debtor was the President, sole officer, and shareholder of National at all times relevant to this controversy. Thus, this Court is satisfied that the Debtor was an insider at all times relevant to the controversy. Clearly, upon a cursory review of Section 727(a)(7) of the Code and its subsections, the only applicable subsection is Section 727(a)(6)(A) of the Code, the debtor's failure to obey an order of the court.

■ Although F.R.B.P. 4005 places the burden on the objecting creditor, it is up to the plaintiff to show that there has been a violation of a court order. *In re Jerry Beeber*, 239 B.R. 13, 30 (Bankr. E.D.N.Y.1999). "The burden of going forward then shifts to the debtor to prove that he or she has not committed the objectionable act." *Id.* at 30 (citing *Connelly v. Michael*, 424 F.2d 387 (5th Cir. 1970)). Although Sections 727(a)(6) and (7) of the Code allow a bankruptcy court to deny a debtor's discharge for failure to obey a lawful court order, such a finding does not necessarily mandate denying discharge. *In re Barman*, 237 B.R. 342, 352 (Bankr.E.D.Mich.1999).

■ This Court should balance the policy of construing the discharge provision liberally to grant discharge to an honest debtor against the policy of denying relief to a debtor who intentionally engages in dishonest practices and violates the Bankruptcy Code provisions. *Id.* at 352. In order to warrant the denial of a discharge, the Debtor's failure and refusal to comply with a court order must be "intentional and not simply sporadic or inadvertent. An objection to discharge has 'been denied when the debtor's failure to comply with an order was due to inadvertence and mistake, as opposed to willful, intentional disobedience or dereliction.' " *Id.* at 349.

Applying the foregoing law to the facts at hand the evidence is undisputed that the Debtor's pattern of writing checks falls within the exception to discharge as set forth in Section 727(a)(6)(A). It is without dispute that the funds transferred to Chase were for an automobile titled in the Debtor's individual name at the time the checks were endorsed. It is further without dispute that the funds transferred to Serendipity CC were for the Debtor's personal membership in the tennis club and

that the funds made payable to cash were transferred to petty cash, out of which the Debtor received compensation as an employee of National, which was not authorized. The Debtor claimed he understood National could operate business as usual under the May 7th Order; however, the Debtor knew that he could not receive any salary or compensation as an officer, director, stockholder or insider of National unless approved by this Court. It is without dispute that this Court never authorized the payment of any salary or compensation to the Debtor but that the Debtor wrote checks for "cash," to pay himself knowing that he could not receive any compensation without court approval.

This Court is satisfied that the facts of this case warrant denying the Debtor his discharge based upon Section 727(a)(6)(A) of the Code. Clearly, the Debtor violated several Orders entered by this Court in the National bankruptcy case. Although the Debtor testified that he disclosed all checks to the U.S. Trustee and his attorney, the funds he withdrew were not for the ordinary course of National's business but were in fact for the Debtor's personal benefit.

Based on the foregoing, this Court finds that the Debtor's failure to comply with this Court's Orders were willful and intentional, which warrants denying the Debtor his discharge.

A separate final judgment shall be entered in accordance to the foregoing.